Filed 6/30/16  P. v. Nunez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIAN ANTHONY NUNEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B266772<br>(Super. Ct. No. 2013002710)<br>(Ventura County) |

Julian Anthony Nunez was subject to postrelease community supervision (PRCS) when he was arrested.  (Pen. Code, § 3451.)[1]  He had an informal probable cause hearing before a probation officer where he admitted his PRCS violations and waived his right to a revocation hearing.  Subsequently, at a court hearing the trial court found him to be in violation of PRCS.  Nunez acknowledged that he had been advised of his rights and that he waived them at the probable cause hearing.  Nunez contends, among other things, that the trial court erred because the PRCS revocation process violates his right to due process.  We affirm.

---

[1] All statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Nunez pled guilty to carrying a concealed firearm (§ 25400, subd. (a)(2)) and receiving stolen property (§ 496, subd. (a)). He was released on formal probation for 48 months.

Nunez's probation was revoked and he was ordered to serve 16 months in state prison.

On May 29, 2014, Nunez was released on PRCS. On June 26, 2015, Nunez was arrested for violating his PRCS conditions.

On June 30, 2015, at a probable cause hearing, Probation Officer Venessa Meza found Nunez violated his PRCS conditions. Nunez received and signed a PRCS "waivers of rights and admission form." He waived his right to counsel and to a revocation hearing. He admitted the violations and agreed to a period of confinement for 150 days. On July 2, 2015, the Ventura County Probation Agency filed a petition for revocation.

On July 15, 2015, Nunez filed a motion to dismiss the petition, claiming the PRCS procedure violated his right to due process of law. Nunez relied on *Williams v. Superior Court* (2014) 230 Cal.App.4th 636 (*Williams*) and claimed his probable cause hearing did not comply with *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*). On July 16, 2015, the trial court denied the motion and found the PRCS procedure Nunez received complied with his "due process rights."

On the same day, the trial court found Nunez violated his PRCS conditions. The court asked Nunez whether he had been advised of his rights, waived them and agreed to a 150-day custodial sanction. Nunez responded, "Correct." The court ordered him to serve 150 days in county jail with a credit of 44 days.

DISCUSSION

Nunez contends, among other things, that 1) the revocation of his PRCS violated his right to due process, 2) he did not have a probable cause hearing that complied with *Morrissey* standards, 3) a 21-day delay before his first court hearing was unreasonable, 4) the procedure used by the probation officer at the probable cause

2

hearing was unfair, 5) the waiver he signed was invalid, and 6) he was entitled to the procedures provided to parolees mentioned in *Williams*, *supra*, 230 Cal.App.4th 636.

The People object to the consideration of issues Nunez is raising that he did not raise in the trial court. Their objections are well taken. But even on the merits, the result does not change.

The PRCS procedures here did not violate Nunez's equal protection or due process rights. (*People v. Gutierrez* (2016) 245 Cal.App.4th 393, 402-404; see also *People v. Byron* (2016) 246 Cal.App.4th 1009, 1014-1017.) After his arrest for violating PRCS conditions, Nunez received a prompt probable cause hearing. (*Gutierrez*, at p. 402.) The PRCS hearing officers who decide probable cause are neutral decision makers. (*Morrissey*, *supra*, 408 U.S. at p. 485 ["someone not directly involved in the case"]; *Gutierrez*, at p. 402.) PRCS procedures and parole procedures are not required to be identical. (*Gutierrez*, at pp. 403-404.) There are valid justifications for the different procedures. (*Ibid.*) "The requirement for a formal arraignment in the superior court within 10 days of arrest, as discussed in *Williams*, does not apply to PRCS revocations." (*Byron*, at p. 1017.) "Nowhere in the PRCS statutory revocation scheme is there a requirement for the appointment of counsel at the initial hearting." (*Id.* at p. 1016, fn. 4.)

Moreover, Nunez presented no evidence to show that PRCS hearing officers at the probable cause hearings are not neutral, that their findings are incorrect or unreliable, that the procedure was unfair, or that he was not afforded a prompt probable cause hearing after his arrest. Consequently, he is not in a position to challenge the trial court's findings that the PRCS probable cause hearings comply with *Morrissey* standards and his due process rights were not violated.

Nunez contends his signed waivers are invalid because they occurred before the petition to revoke PRCS was filed. Section 3455, subdivision (a) provides that "[a]t any point during the process initiated pursuant to this section, a person may waive, in writing, his or her right to counsel, admit the violation of his or her postrelease community supervision, waive a court hearing, and accept the proposed modification of his or her postrelease community supervision." Nunez construes the phrase "at any point

3

during the process" to mean that the filing of the petition to revoke PRCS starts the "process." Under his construction, a waiver of rights may not occur before that petition is filed. We disagree.

The supervising agency may not file the petition to revoke PRCS until it determines that intermediate sanctions are not appropriate. (§ 3455, subd. (a).) After the hearing officer decides probable cause exists for PRCS violations, the PRCS participant is given the opportunity to admit or deny the allegations, agree to proposed PRCS modifications and a waiver of his or her rights. (*Ibid.*) If the individual agrees to the modification, the matter "proceed[s] to court for the entry of the order of modification, but the supervised person is not required to attend the proceedings. Nothing in the statutory scheme would preclude the probation officer from preparing a 'package' for simultaneous filing, which would contain the petition, the executed waiver of appearance and admission, and the proposed order of modification." (Couzens et al., Sentencing California Crimes, Sentencing After Realignment (Rutter 2015) § 11:86, pp. 11-141-11-142.)

Moreover, in his motion to dismiss the petition, Nunez made no claim that the waivers he signed at the probable cause hearing were either premature or invalid because they occurred prior to the filing of the petition.

Nunez suggests he was not given a reasonable opportunity to knowingly and intelligently respond to the PRCS violations at the probable cause hearing and waive his rights. But he received an "advisement of rights" form, which he signed, informing him of the probable cause hearing procedure. Nunez was advised of his right "to present letters and documents and to speak on [his] own behalf at this hearing." At the probable cause hearing, he explained the circumstances surrounding the violations and his desire to "change his life." He also "apologized for missing his appointments."

It is well established that a revocation hearing "may be waived" by the person entitled to such a hearing. (*People v. Vickers* (1972) 8 Cal.3d 451, 457.) The procedure for PRCS participants to agree to waiver offers from the supervising agency

4

and "admit the PRCS violation" is authorized by statute. (*People v. Byron*, *supra*, 246 Cal.App.4th at p. 1015.)

Nunez signed a PRCS waivers of rights and admission form, where he acknowledged that he was waiving his rights: 1) to a revocation hearing, 2) to appointed counsel, 3) to testify, 4) to present evidence, 5) to call witnesses, and 6) to appear and remain silent at a revocation hearing. He said that his admission of the violations and his waivers of rights were "executed freely, voluntarily, and without any coercion or promise of immunity," and that he understood the rights and waivers of rights he was making. The hearing officer also signed a statement confirming her observation that Nunez "[a]ppeared to understand" his waivers of rights and admissions which he signed after the completion of the June 30, 2015, probable cause hearing.

Nunez was no stranger to the PRCS revocation process. The probation officer's written report for revocation reflects that "[t]o date [Nunez] has served two flash incarceration[s] and three revocations." In February 2015, Nunez signed a PRCS waivers of rights and admission form involving prior PRCS violations at a prior probable cause hearing.

At the July 16, 2015, hearing, Nunez appeared in court with his counsel and had an opportunity to challenge the waivers he signed. Instead, he confirmed the waivers. The court questioned Nunez and accepted the waivers.

The denial of a *Morrissey*-compliant probable cause hearing does not warrant reversal unless it results in prejudice. (*In re La Croix* (1974) 12 Cal.3d 146, 154-155.) Nunez makes no showing that a due process defect or any alleged defect prejudiced him. (*In re Moore* (1975) 45 Cal.App.3d 285, 294; see also *In re Winn* (1975) 13 Cal.3d 694, 698 [defendant has the burden of showing prejudice].) Nunez *admitted* the PRCS violations. He waived his right to a revocation hearing. At the court hearing Nunez's counsel made no claim that Nunez's admissions were not voluntary, that Meza acted unfairly, that Nunez did not knowingly and intelligently waive his rights, or that Nunez was not in violation of PRCS. (*People v. Mayfield* (1993) 5 Cal.4th 142, 172 [challenges to the voluntariness of waivers and admissions that are not raised in the trial

5

court are forfeited on appeal].)  Nunez has made no showing of any trial court error.  Moreover, he has served the custodial sanction.  "[T]here is nothing for us to remedy . . . ."  (*Spencer v. Kemna* (1998) 523 U.S. 1, 18.)  We have reviewed his remaining contentions and conclude he has not shown grounds for reversal.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

PERREN, J.

TANGEMAN, J.

Donald D. Coleman, Judge

Superior Court County of Ventura

_____

Linda L. Currey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Connie H. Kan, Deputy Attorney General, for Plaintiff and Respondent.